UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| CASEY BRYNTESEN, *et. al.*, | Case No. 2:13-cv-00491-BLW |
|---|---|
| Plaintiffs, | MEMORANDUM DECISION AND ORDER |
| v. | |
| CAMP AUTOMOTIVE, INC., *et. al.*, | |
| Defendants. | |

## INTRODUCTION

The Court has before it Defendants' Motion Regarding Choice of Law Governing Punitive Damages (Dkt. 56), Defendants' Motion for Sanctions (Dkt. 63), Defendants' Motion to Exclude Plaintiffs' Expert Witness James Bower (dkt. 70), and Defendants' Motion to Exclude Plaintiffs' Rebuttal Experts and Late-Disclosed Experts (Dkt. 91).

## ANALYSIS

### 1. Choice of Law

As both parties recognize, federal courts sitting in diversity apply the choice-of-law provisions of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497, (1941). Idaho applies the "most significant relationship" test set out in the Restatement (Second) of Conflict of Laws to determine which state's laws govern tort cases. Section 145 of the Restatement requires courts to consider: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile,

residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *Grover v. Isom*, 53 P.3d 821, 824 (Idaho 2002). "'Of these contacts, the most important in guiding [the Idaho Supreme Court's] past decisions in tort cases has been the place where the injury occurred.'" *Id.* (quoting *Seubert Excavators, Inc. v. Anderson Logging Co.*, 889 P.2d 82, 85 (Idaho 1995)).[1]

Once the Court analyzes the § 145 factors, "they are evaluated in light of the following policy concerns [set out in § 6 of the Restatement]": (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) the ease in the determination and application of the law to be applied. *Grover*, 889 P.2d at 85. These considerations are not designed to be applied in a mechanical way. Rather, the conflict must be rationally evaluated in light of the policies underlying the conflicting rules of law. *See Johnson v. Pischke*, 700 P.2d 19, 22 (Idaho 1985).

---

[1] The Idaho Supreme Court recognized that the lower Idaho Court of Appeals has held that the place of injury does not always control the choice of law, but the Idaho Supreme Court did not reject its own precedent that the most important consideration in determining choice of law is the place where the injury occurred.

### A. *Place Where the Injury Occurred*

Idaho is the place where the injury occurred in this case. Defendants disagree, noting that Washington is where the borrowed vehicle agreement was signed, that Washington is where the Bryntesens took possession of the loaner vehicle, and that Washington is where the Defendants were when they reported the vehicle stolen. Defendants are correct that all these events occurred in Washington. The question, though, is where did the *injury* occur? The answer is Idaho. That is where the Bryntesens were pulled over, detained, and questioned by the police.

The Court is also not persuaded by Defendants' suggestion that it was mere happenstance that the Bryntesens were in Idaho when they were pulled over by the police. The Bryntesens are, and were at the time of the incident, residents of Idaho. Thus, they were not unexpectedly in Idaho or in Idaho by chance. Accordingly, the Court finds that the injury occurred in Idaho, and this factor weighs heavily in favor of applying Idaho law.

### B. *Place Where the Conduct Causing the Injury Occurred*

The conduct which caused the injury was the improper reporting of the vehicle as stolen. The place where that occurred could be considered a bit nuanced because a stolen vehicle is typically placed on a national database – suggesting the cause of the injury was nationwide. However, the call to the police reporting the vehicle stolen was made in Washington, and that was the actual cause of the injury. Accordingly, this factor weighs in favor of applying Washington law.

### C. *The Domocile, Residence, Nationality, Place of Incorporation and Place of Business of the Parties*

The Bryntesens live in Idaho, and Defendants live primarily in Washington, with parent companies in Oregon and Delaware. Thus, this factor is neutral.

### D. *The Place Where the Relationship, if any, Between the Parties is Centered*

The Bryntesens purchased their vehicle in Washington. They also serviced their vehicle in Washington, and, more importantly, received the loaner vehicle in Washington. Therefore, this factor weighs in favor of applying Washington law.

### E. *Idaho Law Applies*

Under these circumstances, the Court finds that Idaho law applies. Although the factors as a whole do not definitively suggest one state's law should apply over the other, the Idaho Supreme Court's instruction that the most important factor to consider is where the injury occurred tips the scale in favor of applying Idaho law. *Grover*, 53 P.3d at 824.

## 2. Sanctions

Defendants ask the Court to sanction Plaintiffs for late disclosure of three videos – two videos of the arrest incident made by bystanders, and one video of Casey Bryntesen calling Scott Grumbly of Camp BMW made by an individual unknown to Defendants. Both parties accurately recite the decision tree often used by this Court to determine whether Rule 37 sanctions are appropriate for Rule 26 disclosure failures. Rules 26 and 37 contemplate a five-step decision tree for resolving whether exhibits were timely disclosed: (1) Was the exhibit identified in the Rule 26(f) initial disclosures? (2) If not,

was the exhibit identified in a supplemental disclosure pursuant to Rule 26(e)? (3) If not, has the exhibit otherwise been made known to the other parties during the discovery process or in writing thereby excusing the failure to supplement under Rule 26(e)? (4) If not, has the disclosing party shown that its failure was substantially justified to avoid Rule 37 sanctions? (5) If not, has the disclosing party shown that its failure was harmless to avoid Rule 37 sanctions?

Here, Plaintiffs acknowledge that the three videos were not identified in their initial disclosures. Nor were they specifically identified in a Rule 26(e) supplement. They were subsequently made known to Defendants, and are obviously known to Defendants now, but the circumstances of that disclosure are concerning.

Counsel for Plaintiffs suggest they mistakenly believed the videos were disclosed with other digital images in their initial disclosures. Mistakes like this surely happen. However, when served with subsequent discovery requests for photographs and videos of the incident, Plaintiffs again failed to produce the videos. Then, defense counsel wrote a letter to Plaintiffs' counsel stating that "[a]t some point in time, I seem to recall hearing that part of this incident had been recorded on a video. Please confirm that the three color photographs produced are those taken by Michael Wickham, and produce any and all other photographs or motion picture/videos as a supplement to Plaintiffs' responses to Request for Production No. 9." *Jackson Decl.,* Ex. 4, Dkt. 65-1. Plaintiffs' counsel did not respond. Instead they now contend that the letter's reference to the video "escaped the

notice of Plaintiffs' counsel" because they were focused on other discovery and believed the videos had been produced. *Schmidt Decl.,* ¶ 6, Dkt. 78.

Plaintiffs only produced the videos after Sheree Bryntesen acknowledged their existence during her deposition. And only after disclosing the videos of the incident, did Plaintiffs' counsel "investigate whether any other media files had also been inadvertently omitted from previous disclosure and discovery responses." *Plf. Br.,* at p. 5, Dkt. 76. "It was then that Plaintiffs' counsel discovered that the video of the telephone conversation between Casey Bryntesen and Scott Grumbly had not yet been disclosed or produced." *Id.*

Mistakes and oversights happen, but the number of mistakes and oversights here are troubling. Especially where the disclosure was not ultimately made until after the vast majority of the depositions occurred – depriving defense counsel of the opportunity to ask most witnesses, particularly the officers involved in the arrest, about the videos. Plaintiffs failed to timely disclose the videos as required by Rule 26(a) and (e). And, under these circumstances, the Court finds that the late disclosure was not substantially justified or harmless – as is necessary to avoid Rule 37 sanctions. Repeated oversights are not substantial justification, and defense counsel's inability to question witnesses about the videos during their depositions is surely not harmless.

Rule 37(c) states that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is

harmless. In addition to or instead of this sanction, the court on motion or after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed.R.Civ.P. 37.

Here, the proper sanction is to preclude Plaintiffs from using the videos on a motion, at a hearing, or at trial. Defendants may still use the videos. However, if they do so, the Court will then allow Plaintiffs to use them as well – Defendants can make that choice. Additionally, the Court will order Plaintiffs to pay Defendants' fees and costs for bringing the motion for sanctions. But Defendants' request that the Court also sanction Plaintiffs by precluding them from using certain depositions and informing the jury of the late disclosure is excessive and unwarranted.

3. **Expert James Bower**

Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose the identity of any expert witness. The disclosure "must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specifically employed to provide expert testimony in the case. . . ." Fed. R. Civ. P. 26(a)(2)(B). The report must contain certain information outlined in Rule 26(a)(2)(B)(i-vi). A party must supplement or correct its disclosure if necessary. Fed. R. Civ. P. 26(e).

Here, the Court's Case Management Order required Plaintiffs to disclose their experts on or before September 15, 2014. Dkt. 30. Plaintiffs timely disclosed James

Bower as an expert witness, and filed a document titled "Plaintiffs Expert Witness Disclosure." Dkt. 60. That document addresses the items listed in Rule 26(a)(2)(B)(i-vi), but it appeared to be written by someone other than Bower because it refers to Bower in the third-person. Dkt. 60. The document is signed by Plaintiffs' counsel.

On October 20, 2014, Plaintiffs provided the opposing parties with a "corrected" version of the document. That document is essentially the same as the initial document, except that it does not refer to Bower in the third-person, and it is signed by Bower. It also includes a new introductory paragraph which indicates that the initial document contained "the verbal opinions prepared (dictated) by me [Bower] verbally, which were typed and reviewed for my final approval prior to filing." *Schmidt Decl.,* Ex. C, Dkt. 73. Plaintiffs claim to have provided this document to the opposing parties as a corrected expert report pursuant to Rule 26(e). Plaintiffs assert that they corrected a formatting issue, changing the language from the third to the first person, and added Bower's signature.

The advisory committee notes to Rule 26 address the intended meaning of the phrase "prepared and signed by the witness." They explain that a report can be "prepared" by an expert witness even if counsel has aided the witness. The advisory committee notes specifically state that "Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with [certain] experts . . . this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the

testimony to be given by the witness and it must be signed by the witness." Fed. R. Civ. P. 26(a)(2)(B) (1993 advisory committee notes).

This Court has previously noted that given this amplification in the advisory committee notes, if counsel acts as a scrivener, and the expert supplies the substantive content for the written report, the report is nonetheless "prepared" by the expert within the meaning of the rule. *Weeks v. Ohio Nat. Life Assur. Corp.,* 2011 WL 6140967, *4 (D.Idaho 2011) (*citing Crowley v. Chait*, 322 F.Supp.2d 530, 543–45 (D.N.J.2004); *Wilderness Dev., LLC v. Hash*, 2009 WL 564224, at *4 (D.Mont.2009). That appears to be the case here. Although counsel, acting as scrivener, should have prepared the report using first-person language, the report nevertheless contained the opinions dictated by Bower, and it reflects the testimony he intends to give at trial. Accordingly, the Court finds that the report was prepared by Bower, and that it was properly supplemented to rephrase scrivener errors.

With regard to the missing signature, it appears that counsel failed to understand or comply with the clear language of the rule – which is why counsel, not Bower, signed the first disclosure. However, as many other courts have found, excluding an expert from testifying because of a missing signature is too punitive. *See e.g. Wilderness Development, LLC v. Hash,* 2009 WL 564224, *4 (D.Mont. 2009), *Jenkins v. Bartless,* 487 F.3d 482, 488 (7th Cir. 2007), *Abel v. City of Algona,* 2008 WL 3545048, *2 (W.D.Wash 2008). Instead, the report should be cured by adding the expert's signature.

Here, Bower signed the corrected disclosure, which was substantively identical to the first disclosure.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, the errors in the initial report were harmless because the other parties were provided with the complete substance of Bower's report in a timely fashion. Accordingly, the Court will deny the motion to exclude Bower as an expert witness.

**4.      Other Experts**

Defendants ask the Court to exclude Plaintiffs' rebuttal witnesses from testifying because they do not satisfy the requirements of Rule 26(a)(2)(A), and to exclude two of Plaintiffs' expert witnesses for the same reason, and because they were not timely disclosed.

      **A.      Kootenai County Sheriff's Office Officers**

The Kootenai County Sheriff's Office ("KCSO") officers are not witnesses retained or specifically employed to provide expert testimony. Accordingly, they are not required to provide a Rule 26(a)(2)(B) report. Therefore, their expert disclosures must only state "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

To satisfy their Rule 26(a)(2)(C) burden, Plaintiffs' disclosure explained that the KCSO officers are expected to testify as set forth in their deposition transcripts. Defendants took issue with that disclosure because it did not refer to specific portions of the depositions. In their response brief, Plaintiffs referenced the specific portions of the depositions which fulfill the Rule 26(a)(2)(C) requirements. In reply, Defendants appear to be satisfied with that reference, but note that the KCSO officers should not be allowed to "offer any expert testimony from those witnesses beyond the specific disclosure as set for the in their response to Defendants' Motion to Exclude." *Def. Br.,* at p. 2, Dkt. 104. The Court agrees, and the KCSO officers' expert testimony will be limited to what is set forth in Plaintiffs' response brief. The KCSO officers will otherwise be limited to testifying as fact witnesses.

With respect to Officer Kernkamp, Plaintiffs state that the only expert opinion she will offer is "limited to what is set forth in her deposition, which is simply that it is her opinion that reporting unaccounted-for vehicles as 'stolen' creates an unreasonable risk that innocent drivers of the missing vehicles might be detained by law enforcement." *Plf. Br.,* p. 5, Dkt. 97. In reply, Defendants suggest that Officer Kernkamp should be precluded from offering any expert opinion beyond that specific disclosure. The Court agrees. Officer Kernkamp's expert testimony will be limited in such a manner, and she will otherwise be limited to testifying as a fact witness.

**B.  Ryan Stoker**

Plaintiffs suggest that Stoker is a fact witness, but out of an abundance of caution, they supplemented their expert disclosures by adding him and providing Defendants with his declaration to satisfy Rule 26(a)(2)(C). Plaintiffs note that Stoker was not initially disclosed as an expert because they did not obtain his declaration until after their initial disclosure deadline.

The short declaration satisfies Rule 26(a)(2)(C). To the degree Stoker testifies as an expert, his expert testimony will be limited to the opinions contained in his declaration. He is otherwise limited to testifying as a fact witness.

### C. Bower as Rebuttal Witness

Plaintiffs explained that they disclosed Bower as a rebuttal expert "to err on the side of caution in the event that Defendants' first motion to exclude [Bower] is successful. As explained above, that motion is denied. Accordingly, the Court assumes Plaintiffs do not intend to call Bower as a rebuttal expert. Accordingly, this issue is moot.

If Plaintiffs do, in fact, intend to use Bower as a rebuttal expert in addition to calling him as an expert in their case-in-chief, that issue will need to be addressed in a separate order. The parties should contact the Court's staff if they believe that issue needs to addressed, and the Court will set a briefing schedule on the matter.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion Regarding Choice of Law Governing Punitive Damages (Dkt. 56) is **DENIED**. The Court will issue a separate order on the motion to amend the complaint to add punitive damages.

2. Defendants' Motion for Sanctions (Dkt. 63) is **GRANTED** as explained above.

3. Defendants' Motion to Exclude Plaintiffs' Expert Witness James Bower (dkt. 70) is **DENIED**.

4. Defendants' Motion to Exclude Plaintiffs' Rebuttal Experts and Late-Disclosed Experts (Dkt. 91) is **GRANTED in part** and **DENIED in part** as explained above.

DATED: January 20, 2015

B. Lynn Winmill  
Chief Judge  
United States District Court