UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| CASEY BRYNTESEN, *et al.*, | Case No. 2:13-cv-00491-BLW |
|---|---|
| Plaintiffs, | MEMORANDUM DECISION AND ORDER |
| v. | |
| CAMP AUTOMOTIVE, INC., *et al.*, | |
| Defendants. | |

# INTRODUCTION

The Court has before it Plaintiffs' Motion for Leave to Amend their Complaint to Assert Claim for Punitive Damages Pursuant to Idaho Code § 6-1604 (Dkt. 80). The issue has been fully briefed and taken under advisement. For the reasons expressed below, the Court will deny the motion in part and grant the motion in part.

# BACKGROUND

The underlying claims of this case stem from the detention of the Bryntesen family while driving a Camp BMW loaner vehicle that was incorrectly reported as stolen. Steve Wilson is the used car manager at Camp BMW, a Lithia Motors dealership. On June 17, 2013, Wilson noticed that a 2011 BMW 328 sedan was missing during a monthly inventory. After his discovery, Wilson searched the car lot, spoke with the available employees and a third-party repair center, and reviewed outstanding vehicle

loan agreements. He also spoke with the service manager, Scott Grumbly, who assisted him in the search for the vehicle.

That same day, Wilson requested that BMW perform a GPS locate on the vehicle but was informed that he would need to first file a police report. Consequently, Wilson reported the car as stolen. The vehicle was not stolen, but had actually been loaned to the Bryntesens while their vehicle was being repaired. Matthew Rydman, a service department employee, loaned the vehicle to the Bryntesens a month earlier and misfiled the loaner agreement. Throughout Wilson's search, he never contacted Rydman, who was attending an event in California at the time.

A few days after Wilson reported the vehicle as stolen, police pulled over and detained the Bryntesens for possession of a stolen vehicle. Plaintiffs now seek to amend their Complaint to assert punitive damages claims against defendants Steve Wilson, Camp Automotive (dba Camp BMW), and Lithia. Plaintiffs also seek to amend their Complaint to state with more particularity the basis for negligence liability of defendant Lithia.

## ANALYSIS

1. **Plaintiffs' Motion to Amend to State Basis for Negligent Liability of Lithia**

Plaintiffs seek to amend their Complaint to state with more particularity the basis for negligence liability of defendant Lithia. *Pl.'s Motion* at 1-2, Dkt. 80. The Court will freely grant a party leave to file an amended pleading "when justice so requires." FED. R. CIV. P. 15(a)(2). In its response brief, Lithia has not opposed Plaintiffs' amendments

"regarding Lithia's relationship to the other Defendants." *Def.'s Reply* at 13, Dkt. 95. On the other hand, BMW of North America opposes such an amendment because the amended complaint "re-allege[s] false facts that they know are untrue and unsupported by any evidence. *Def. BMW's Reply*, at 3, Dkt. 94. However, the claims against BMW of North America remain unchanged in the proposed amended complaint. BMW of North America's objection to those claims may be taken up on a motion for summary judgment. Accordingly, the Court will grant this portion of Plaintiffs' motion.

### 2. Plaintiffs' Motion to Amend to Assert Punitive Damages

Plaintiffs also seek to amend their complaint to assert punitive damages. Plaintiffs' punitive damages claim is governed by Idaho Code § 6-1604, which provides:

> In any action seeking recovery of punitive damages, the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted.

IDAHO CODE ANN. § 6-1604(1) (2015).

It is in the trial court's discretion to decide whether to submit the punitive damages issue to the jury. *See Manning v. Twin Falls Clinic & Hosp., Inc.*, 830 P.2d 1185, 1190 (Idaho 1992). As a matter of substantive law, it is well established in Idaho that punitive damages are not favored and should be awarded only in the most unusual and compelling circumstances, and are to be awarded cautiously and within narrow limits. *Manning*, 830 P.2d 1185; *Jones v. Panhandle Distribs., Inc.,* 792 P.2d 315 (Idaho 1990); *Soria v. Sierra Pac. Airlines, Inc.,* 726 P.2d 706 (Idaho 1986); *Cheney v. Palos Verdes Inv. Corp.,* 665

P.2d 661 (Idaho 1983); *Linscott v. Rainier Nat'l Life Ins. Co.,* 606 P.2d 958 (Idaho 1980).

An award of punitive damages will only be allowed when the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." *Manning*, 830 P.2d at 1190 (*quoting Cheney*, 665 P.2d at 661). Further, Plaintiffs "must prove [Defendants'] actions toward [Plaintiffs] constituted an extreme deviation from standards of reasonable conduct, which was done with knowledge of the likely consequences *and* an extremely harmful state of mind." *Seiniger Law Office, P.A. v. N. Pac. Ins. Co.*, 178 P.3d 606, 615 (Idaho 2008) (emphasis added). In other words, "[t]he issue revolves around whether the plaintiff is able to establish the requisite intersection of two factors: a bad act and a bad state of mind." *Todd v. Sullivan Const. LLC,* 191 P.3d 196, 201 (Idaho 2008) (*citing Myers v. Workmen's Auto. Ins. Co.,* 95 P.3d 977, 985 (Idaho 2004)).

At trial, these elements must be shown by clear and convincing evidence. *See* IDAHO CODE ANN. § 6–1604(1). "Clear and convincing evidence is generally understood to be [e]vidence indicating that the thing to be proved is highly probable or reasonably certain." *State v. Kimball,* 181 P.3d 468, 472 (Idaho 2008) (internal quotations omitted). For purposes of this motion to amend, however, Plaintiffs do not need to meet this high burden—they need show only "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." *See* IDAHO CODE ANN. § 6–1604(2).

Therefore, although Federal Rule of Civil Procedure 15(a) encourages the trial court to liberally grant motions to amend pleadings this policy is substantially tempered by the requirements under Idaho law dictating that the Court allow Plaintiffs to amend their complaint to assert a claim for punitive damages only if they establish a reasonable likelihood of proving, by clear and convincing evidence, that Defendants' conduct was oppressive, fraudulent, malicious, or outrageous.

In their briefing, Plaintiffs heavily emphasize their experience being stopped by the police. It is not disputed that what happened to the Bryntesens was unfortunate. The Court recognizes "[t]here are few more horrifying experiences than that of being suddenly snatched from a peaceful and orderly existence and placed in the helpless position of having one's liberty restrained, under the accusation of a crime." *Halliburton-Abbott Co. v. Hodge*, 44 P.2d 122, 127 (Okla. 1935). However, an award of punitive damages depends not on whether Plaintiffs went through a horrifying experience, but whether Plaintiffs can show that the Defendants' conduct was oppressive, fraudulent, malicious or outrageous. Plaintiffs have failed to make the requisite showing.

**a. Wilson's actions were not an extreme deviation from reasonable standards of conduct.**

Plaintiffs allege that Wilson was extremely reckless when he reported the missing vehicle as stolen. *Pl.'s Br.* at 15, Dkt. 81. Plaintiffs focus on the fact that Wilson reported the car as stolen based on his "assumption" rather than actual knowledge. Plaintiffs have also emphasized that during his deposition, Wilson agreed that customers "would want [him] to make absolute certain that a loaner vehicle was stolen before [he] reported it as

stolen." *Id.* at 6. Such a weighted question is all but guaranteed to garner the desired response. Clearly the person driving the vehicle to be reported as stolen would want Wilson to be "absolutely certain." The more appropriate inquiry is whether it was an extreme deviation from the reasonable standard of conduct for Wilson to report the car as stolen based on the information he then had in his possession?

It is reasonable for a manager to report a vehicle as stolen without being absolutely certain. To require such certainty would encourage car theft and be inconsistent with the reasonable management of a car dealership. That is not to say, of course, that a manager may report any vehicle as stolen when he is unable to locate it. The manager should search the lot for the missing vehicle, inquire about the vehicle's location with other employees at the dealership, check with repair centers, and loan agreements. Only after the manager reasonably believes that the car was stolen should he contact the police.

Plaintiffs assert that Wilson's conduct was an extreme deviation from the reasonable standard of conduct because "(1) Mr. Wilson reasonably should have known that the 2011 BMW 328 was in the Bryntesens' lawful possession, (2) he knew or reasonably should have known, based on past experiences, that not all unaccounted-for cars were in actuality stolen, and (3) he recklessly disregarded the risk the Bryntesens faced if the vehicle was reported as stolen." *Id.* at 15–16.

It is undisputed that Camp BMW loaned the vehicle to the Bryntesens. When Wilson was unable to locate the vehicle, he searched the car lot, spoke with employees and a third-party repair center, reviewed outstanding Borrowed Vehicle Agreements

("BVA"), and attempted to perform a GPS locate. Wilson was unaware that Rydman, who was not present during inventory, loaned the car to the Bryntesens. During his search, Wilson failed to locate the BVA relating to the Bryntesens' loaner car because it was incorrectly filed. Moreover, Wilson had no reason to consider whether the missing car had been used as a loaner car because it was a used car, and the dealership typically loaned customers new, rather than used, cars. *Decl. of Dylan E. Jackson*, Ex. 2 at 73:3–73:10, Dkt. 95-3. Consequently, Wilson had little reason to assume that the missing car had been loaned to a customer.

Wilson could have done more to ensure that the missing vehicle was stolen, and there is no doubt that there was some negligence in the handling of the BVA for the Bryntesen's loaner vehicle. However, under the circumstances presented here, Wilson's failure to further inquire into the location of the car was not an extreme deviation from the reasonable standard of conduct. Wilson made a reasonable inquiry into the location of the vehicle and, when he was unable to locate the vehicle, he reported the vehicle to the police because he assumed it had been stolen.

Nonetheless, Plaintiffs allege that Wilson knew or reasonably should have known, based on past experiences, that all unaccounted-for cars are not necessarily stolen. It appears, however, there were only a limited number of incidents which Wilson could have been expected to be aware of. In one incident, a missing vehicle was found at a third-party repair center. Although other incidents occurred throughout the Lithia chain, they do not amount to such a pervasive pattern that every Lithia employee in Wilson's

position would have been placed on notice of such incidents. And Plaintiffs have not shown that Wilson knew or should have known about these past incidents. Even assuming, arguendo, that Wilson knew about these incidents, it is questionable whether it was unreasonable for him to report the vehicle as stolen. Certainly, that decision could not be described as oppressive, fraudulent, malicious or outrageous.

Plaintiffs claim that "this type of occurrence has occurred on numerous occasions." *Pl.'s Sur-Reply*, at 5, Dkt. 110. For example, Plaintiffs provided evidence of a "paperwork error" which resulted in Jeannie and Will Chandler being detained in March 2004. Additionally, Plaintiffs rely on responses to a three-part questionnaire sent to Lithia dealerships. However, of those responses, only four involved a customer being questioned by police: one involved an auto accident and three involved questioning customers at a business or residence. These responses demonstrate the rarity of a customer being detained or seriously hindered when a vehicle is reported stolen. Accordingly, even if Wilson knew of these incidents, his conduct cannot be considered an extreme deviation from a reasonable standard of conduct.

In addition, Plaintiffs argue that Wilson recklessly disregarded the risk to his customers when he "reported the vehicle as stolen with the actual knowledge that he was reporting a felonious act and that law enforcement would track down the vehicle, and if it was being driven at the time it was located, they would perform a felony stop on the occupants, which was a serious and dangerous event." *Pl. Br.* at 16. Plaintiffs' argument is steeped in hindsight. Wilson did not report the car as stolen knowing that it was in

Plaintiffs' possession. In the absence of such knowledge, there is simply no way that his decision to report the car as stolen was made with an understanding of or disregard for its likely consequences. *See Manning*, 830 P.2d at 119.

In addition, Plaintiffs have failed to establish that Wilson acted with a bad state of mind. Plaintiffs claim they need only show gross negligence, or deliberate or willful conduct. *Pl.'s Reply*, at 6, Dkt. 100. Contrary to Plaintiffs' assertions, the Idaho Supreme Court has made clear that even where the defendant's state of mind could be termed "gross negligence or deliberate or willful, [such conduct] is not sufficient for an award of punitive damages." *Cummings v. Stephens*, 336 P.3d 281, n.5 (Idaho 2014), *reh'g denied* (Nov. 5, 2014). The Plaintiffs must show that there was "oppressive, fraudulent, malicious, or outrageous conduct." *Id;* IDAHO CODE ANN. § 6-1604(1). Plaintiffs have failed to meet this burden.

The Court is further guided by Idaho's reluctance to award punitive damages absent unusual and compelling circumstances. *See Manning*, 830 P.2d at 1190. With these general and specific guidelines in mind, the Court concludes that Plaintiffs have not established a reasonable likelihood of proving—by clear and convincing evidence—facts supporting a punitive damages award. Accordingly, the Court will deny Plaintiffs' motion to amend their complaint to assert punitive damages against defendant Wilson.

    b. **Plaintiffs cannot show they are entitled to punitive damages against Camp BMW and Lithia due to Wilson's conduct.**

Plaintiffs also seek to assert a claim of punitive damages against Camp BMW and Lithia due to Wilson's conduct. In Idaho, punitive damages may be recovered against a

corporation only if "an officer or director participated in, or ratified, the conduct underlying the punitive damage award." *Vendelin v. Costco Wholesale Corp.,* 95 P.3d 34, 48–49 (Idaho 2004) (citations omitted). Because Wilson's conduct did not warrant an award of punitive damages, such conduct alone cannot serve as a basis for punitive damages against Camp BMW and Lithia.

> c. **Plaintiffs cannot show they are entitled to punitive damages against Lithia due to Lithia's implementation and enforcement of its policy.**

In addition to Wilson's conduct, Plaintiffs allege that they are entitled to recover punitive damages against Lithia "because [Lithia's] own implementation, enforcement, and failure to clarify its policy as to when vehicles should be reported as stolen is also extreme and outrageous conduct that is utterly indifferent to the real risks the policy poses to Lithia customers." *Pl.'s Br.* at 18, Dkt. 81. Plaintiffs contend that "[t]he extreme nature of Lithia's conduct is the product of two factors: (1) Lithia had knowledge that its policy resulted in innocent customers being detained for possession of a stolen vehicle, and (2) it intentionally and indifferently disregarded the risks that were inherent in this foreseeable result." *Id.* at 19.

Lithia's policy requires its dealerships to complete an inventory every quarter and instructs its 128 dealerships that "[i]f a vehicle cannot be located and you think it is stolen, contact insurance_claims@lithia.com for further instructions on how to proceed. Attach a copy of the Police Report as backup." *Schmidt Supplemental Decl.*, Ex. 11, Dkt. 107-1. Since Lithia's inventory policy required that a police report must be submitted to Lithia's insurance department when a vehicle was reported as stolen, it is a fair

assumption that Lithia knew of when missing cars were reported as stolen and, more importantly, when a car reported as stolen turned out to simply be missing. Therefore, the Court assumes that Lithia knew or should have known about any incident where a vehicle was wrongfully reported as stolen within its network of dealerships.

However, Lithia's records show that most of the vehicles that were reported as stolen were indeed stolen. And, in the instances that a vehicle was incorrectly reported as stolen, customers were only detained in a few instances. Indeed, in response to the three-part questionnaire sent to Lithia dealerships, only 13 responses were potentially pertinent to this case. *See Pl.'s Sur-Reply* at 5–7, Dkt. 110. Of those 13 responses, three were redundant, one was incorrectly included, one car was actually stolen, two police reports were cancelled before officers ever contacted a customer, four incidents impacted customers, and two responses included incidents similar to this incident but that occurred after the filing of this suit.

Of the pre-suit incidents identified, only four had any impact on customers, but none of those incidents resulted in a felony stop of a customer. In one incident, a customer was approached by police after a vehicle listed on her paperwork was involved in a hit and run. It was discovered that an error had been made and police did not detain the customer. In 2011, another incident resulted in Tami Burks being detained at the Texas hospital where she worked after an employee failed to file the BVA. Ms. Burks was questioned for three hours by police before the error was resolved. In 2012, police questioned a customer at their home in Fresno, California after a BVA was incorrectly

filed. The customer provided a copy of the BVA and the matter was resolved. In the fourth incident, a customer was approached by police at their workplace in Midland, Texas due to a "paperwork error." The customer provided a copy of the BVA and the matter was resolved. Additionally, Plaintiffs identified an incident that occurred nine years prior to this incident where the Chandlers were detained. But, in that incident, the Chandlers were pulled over for speeding and no gun was pointed at them. *Decl. of Jeanie Chandler*, at ¶5–6, Dkt. 86. These responses demonstrate that it is truly a rare occurrence for customers to be wrongly detained on suspicion of a stolen car.

Plaintiffs supplemented their briefing with evidence that two incidents, similar to the Bryntesens' experience, occurred in 2014 and 2015. *Pl.'s Sur-Reply*, at 2–7, Dkt. 110. Although these incidents cannot bear upon Lithia's prior knowledge, they may be evidence of a continuing oppressive course of conduct. *See, e.g., Cuddy Mountain Concrete Inc. v. Citadel Constr. Inc.*, 824 P.2d 151, 160–61 (Idaho 1992) (finding that evidence of a general contractor's continuing course of oppressive conduct toward a subcontractor was a factor supporting punitive damages). However, the weight of the evidence shows that these incidents were unlikely consequences of Lithia's conduct.

Plaintiffs also allege that some employees felt pressured by their superiors to report missing vehicles as stolen. However, this was not unreasonable conduct if their superiors reasonably believed the vehicle to be stolen. As may be appreciated from the other sections of Lithia's policy, vehicles that have not been located during inventory may be in a variety of places. For example, the vehicle may be in-transit, at auction,

loaned to a customer with a BVA filed, on trade, wholesaled to another dealer, sublet, rented, sold, or stolen. *Schmidt Supplemental Decl.*, Ex. 11, Dkt. 107-1. When a manager is unable to physically touch a vehicle during an inventory, and is therefore unable to ensure it is on the lot, Lithia's policy is to input the code corresponding to the status of the vehicle. Accordingly, Lithia's policy directs employees to examine all of these potential situations before reporting a missing vehicle as stolen. Indeed, the instructions under the heading "PR – Police Report (Stolen)" indicate that employees should report the vehicle "if the vehicle cannot be located *and you think it is stolen*." *Id.* (emphasis added). As discussed above, it is not necessary to be absolutely certain that a vehicle has been stolen. Without more, the negligence and carelessness of Lithia's employees in implementing the policy for reporting stolen vehicles is insufficient to show an extreme deviation from the reasonable standard of conduct. Accordingly, Lithia's implementation of its policy is not an extreme deviation from the reasonable standard of conduct.

Additionally, Plaintiffs rely on *Boise Dodge Inc. v. Clark*, 453 P.2d 551, 558 (Idaho 1969) for their assertion that punitive damages are appropriate in this case to take away Lithia's incentive to engage in bad conduct by making it unprofitable. *Pl.'s Reply* at 2, Dkt. 100. However, there is scant evidence that Lithia's conduct increases its profits. In *Boise Dodge*, a dealership was fraudulently resetting the odometer on test vehicles and selling them as new. *Boise Dodge Inc.*, 453 P.2d at 553. This case simply does not involve that kind of fraudulent conduct.

Similar to their assertion against Wilson, Plaintiffs claim Lithia's extremely harmful state of mind is shown by Lithia's "indifference and reckless disregard" to the likely consequences of its actions. *Pl.'s Sur-Reply* at 3–4, Dkt. 110. Yet it is not the likely consequence of reporting a vehicle as stolen that an innocent customer will be engaged and detained by police officers during the recovery of the vehicle. Accordingly, Plaintiffs have failed to show that Lithia acted with the requisite harmful state of mind.

Plaintiffs have failed to show a reasonable likelihood of proving—by clear and convincing evidence—facts at trial that support an award of punitive damages against Lithia. Legal remedies, other than punitive damages, are available to compensate Plaintiffs for any damages they have suffered. Accordingly, Plaintiffs' motion for leave to amend their complaint to assert punitive damages against Lithia will be denied.

## ORDER

**IT IS ORDERED:**

1. Plaintiffs' Motion for Leave to Amend Complaint (Dkt. 80) is **GRANTED** in part, and **DENIED** in part as explained above.

DATED: April 16, 2015

B. Lynn Winmill  
Chief Judge  
United States District Court