UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

CASEY BRYNTESEN, *et. al.*,

    Plaintiffs,

      v.

CAMP AUTOMOTIVE, INC., *et. al.*,

    Defendants.

Case No. 2:13-cv-00491-BLW

MEMORANDUM DECISION AND ORDER

**INTRODUCTION**

The Court has before it BMW of North America's Motion for Summary Judgment of Dismissal (Dkt. 130) and Camp Automotive, *et. al.*'s, Motion for Partial Summary Judgment (Dkt. 140). At the hearing on May 12, 2015, the Court orally granted BMW of North America's motion,  granted Camp Automotive's motion with regard to the Bryntesen's intentional infliction of emotional distress claim), but denied Camp Automotive's motion with regard to the Bryntesen's breach of contract claim. The Court reserved ruling on the remaining claims against Camp Automotive, but indicated its inclination to dismiss those claims as well.  Upon further consideration, the Court has determined that it will, in fact, grant Camp Automotive's motion as to all claims except the breach of contract claim. This Memorandum Decision explains the Court's reasoning.

## BACKGROUND

The underlying claims of this case stem from the detention of the Bryntesen family while driving a Camp BMW loaner vehicle that was incorrectly reported as stolen. Steve Wilson is the used car manager at Camp BMW, a Lithia Motors dealership. On June 17, 2013, Wilson noticed that a 2011 BMW 328ix sedan was missing during a monthly inventory. After an unsuccessful search for the vehicle, Wilson requested that BMW of North America ("BMW") perform a GPS locate on the vehicle, but was informed that he must first file a police report. After an unsuccessful renewed attempt to locate the vehicle, Wilson reported it as stolen. However, the vehicle had actually been loaned to the Bryntesens while their vehicle was being repaired. Matthew Rydman, a service department employee, had loaned the vehicle to the Bryntesens a month earlier and misfiled the loaner agreement.

After reporting the vehicle as stolen, Wilson supplied the police report to BMW, which coordinated with the Sheriff's Office to locate the vehicle. The next day, Camp BMW informed the Bryntesens that the repairs to their vehicle would be completed on June 19 or 20. However, on the evening of June 19, police stopped and detained the Bryntesens for possession of a stolen vehicle.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the

summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255.  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux,* 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

Plaintiffs allege four claims against BMW: 1) Count Three: Negligence of BMW Relating to Agency Liability; 2) Count Four: Negligence of BMW in Operating Its Telematics Tracking Systems in BMW Vehicles, 3) Count Nine: False Arrest and Imprisonment; and 4) Count Ten: Loss of Consortium. BMW seeks summary judgment on each of these claims. Defendants Camp Automotive, Inc. (dba Camp BMW), Lithia Motors, Inc., Scott Grumbly, Matthew Rydman, and Steve Wilson (collectively "Defendants") have also moved for summary judgment on the following claims: 1) Count One: Breach of Contract; 2) Count Five: Defamation; 3) Count Seven: Intentional Infliction of Emotional Distress; 4) Count Eight: Violation of the Idaho Consumer Protection Act; and 5) Count Nine: False Arrest and Imprisonment. The Court will address each claim below.

### A. Count Three: Negligence of BMW Relating to Agency Liability

Plaintiffs sought recovery against BMW based upon the negligence of its alleged agents. *See Am. Compl.* at ¶53, Dkt. 1-4. However, Plaintiffs indicate in their briefing that they "do[] not oppose dismissal of Count Three as against BMW." *Pl.'s Opp'n to BMW's*

*Mot. for Summ. J.* at 19, Dkt. 149. Accordingly, the Court will dismiss Count Three of Plaintiffs' Amended Complaint with respect to BMW.

### B. Count Four: Negligence of BMW in Operating Its Telematics Tracking Systems in BMW Vehicles

A cause of action for common law negligence in Idaho has four elements: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Nation v. State, Dep't of Corr.*, 158 P.3d 953, 965 (Idaho 2007) (citations omitted).

Plaintiffs contend that BMW's duty "is the same duty that every actor owes to society at large—to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury." *Pl.'s Opp'n to BMW's Mot. for Summ. J.* at 2, Dkt. 149 (citing to *Alegria v. Payonk*, 619 P.2d 135, 137 (Idaho 1980)). "This is the common law duty rule." *Hunter v. State, Dep't of Corr., Div. of Prob. & Parole*, 57 P.3d 755, 761 (Idaho 2002). However, Idaho "does not impose an affirmative duty on everyone to prevent foreseeable injury to everyone else." *Beers v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 316 P.3d 92, 97 (Idaho 2013).

Generally, the question whether a duty exists is a question of law. *Coghlan v. Beta Theta Pi Fraternity*, 987 P.2d 300, 312 (Idaho 1999). There is ordinarily "no affirmative duty to act to assist or protect another absent unusual circumstances, which justify imposing such an affirmative responsibility." *Id.* at 311. Such an affirmative duty "arises

only when a special relationship exists between the parties." *Beers*, 316 P.3d at 98.

Whether a special relationship exists is determined by evaluating "the sum total of those

considerations of policy which lead the law to say that a particular plaintiff is entitled to

protection." *Coghlan*, 987 P.2d at 311. In determining whether a duty is owed in a

particular context, Idaho courts employ the "balancing of the harm" analysis. *Beers*, 316

P.3d  at 97. This is an analysis that the Court employs "in those rare situations when we

are called upon to extend a duty beyond the scope previously imposed, or when a duty

has not previously been recognized." *Rife v. Long,* 908 P.2d 143, 148 (Idaho 1996). If

such a duty exists, then the duty is to "use reasonable care to avoid injury to the other

person in any situation in which it could be reasonably anticipated or foreseen that a

failure to use such care might result in such injury." *Coghlan*, 987 P.2d at 311 (citations

omitted).

However, "[e]ven when an affirmative duty generally is not present, a legal duty

may arise if one voluntarily undertakes to perform an act, having no prior duty to do so."

*Baccus v. Ameripride Servs., Inc.,* 179 P.3d 309, 313 (Idaho 2008) (internal quotation

omitted). In such a case, the acting party has a duty to perform that act in a non-negligent

manner. *Udy v. Custer Cnty.,* 34 P.3d 1069, 1072 (Idaho 2001). "Liability for an assumed

duty, however, can only come into being to the extent that there is in fact an

undertaking." *Beers*, 316 P.3d at 100 (citing *Udy*, 34 P.3d at 1072). Additionally, "[w]hen

a party assumes a duty by voluntarily performing an act that the party had no duty to

perform, the duty that arises is limited to the duty actually assumed." *Martin v. Twin Falls Sch. Dist. No. 411,* 59 P.3d 317, 321 (Idaho 2002).

Plaintiffs contend that BMW's arguments regarding a special relationship and assumed duty are inapplicable because this is not a "failure to act" case. *See Pl.'s Opp'n to BMW's Mot. for Summ. J.* at 3, Dkt. 149. However, Plaintiffs' characterization of BMW's duty is confusing at best.  Although, they claim BMW's argument about a special relationship is inapplicable, they nevertheless contend that BMW's duty "to the users of its vehicles equipped with GPS location technology," is to "prevent unreasonable, foreseeable risk of harm to others." *Id* at 5. By suggesting that BMW's duty is to "prevent" harm to others, Plaintiffs imply that a special relationship exists between BMW and drivers of their vehicles. Because there is ordinarily no general duty to assist or protect another, BMW would have no duty to "prevent" unreasonable, foreseeable risk of harm to Plaintiffs in the absence of a special relationship.

Plaintiffs also claim BMW's argument about an assumed duty is inapplicable, but then contend that "[b]y voluntarily undertaking to utilize GPS technology in BMW vehicles to determine the location of said vehicles, BMW has a duty to perform these locates in a non-negligent manner." *Id.* Essentially, Plaintiffs contend that BMW assumed a duty when it offered the BMW Assist service for subscribers. BMW's duty, therefore, would be to operate this service and perform locates in a non-negligent manner. BMW's alleged negligence was requiring that a police report be filed before performing a locate

and not providing that information to Camp BMW, who may have located the vehicle

without the aid of law enforcement.

### (1)   BMW did not have a special relationship with Plaintiffs.

In determining whether a duty is owed in a particular context, Idaho courts employ

the "balancing of the harm" analysis. *Beers,* 316 P.3d at 97. This analysis considers

policy and weighs several factors including:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the
> plaintiff suffered injury, the closeness of the connection between the
> defendant's conduct and the injury suffered, the moral blame attached to the
> defendant's conduct, the policy of preventing future harm, the extent of the
> burden to the defendant and consequences to the community of imposing a
> duty to exercise care with resulting liability for breach, and the availability,
> cost, and prevalence of insurance for the risk involved.

*Id.* at 98 (quoting Rife, 908 P.2d at 148).

In considering the first *Rife* factor of foreseeability, the Idaho Supreme Court has

stated:

> Foreseeability is a flexible concept which varies with the circumstances of
> each case. Where the degree of result or harm is great, but preventing it is
> not difficult, a relatively low degree of foreseeability is required.
> Conversely, where the threatened injury is minor but the burden of
> preventing such injury is high, a higher degree of foreseeability may be
> required. Thus, foreseeability is not to be measured by just what is more
> probable than not, but also includes whatever result is likely enough in the
> setting of modern life that a reasonably prudent person would take such into
> account in guiding reasonable conduct.

*Turpen v. Granieri*, 985 P.2d 669, 673 (Idaho 1999) (quoting *Sharp v. W.H. Moore, Inc.*,

796 P.2d 506, 509–10 (Idaho 1990)). Foreseeability is generally a question of fact for the

jury to decide but may be ruled upon by the Court as a matter of law when the undisputed

facts lead to only one reasonable conclusion. *Stoddart v. Pocatello Sch. Dist. # 25,* 239 P.3d 784, 791 (Idaho 2010).

In this case, the undisputed facts lead to only one reasonable conclusion—the possibility of harm to Plaintiffs by BMW's actions was virtually unforeseeable. No reasonable jury could conclude that BMW's policy created an unreasonable risk of harm to users of its vehicles. BMW's policy requires that its subscriber report the vehicle as stolen before it performs a locate on the vehicle. The policy (1) protects the privacy rights of BMW drivers, (2) ensures that unauthorized persons are not improperly tracking a vehicle's location, and (3) reduces the risk that subscribers may place themselves or others in harm's way while attempting to recover the vehicle without police assistance.[1] Such a policy is clearly reasonable and represents BMW's efforts to exercise ordinary care to protect its service subscribers from the very foreseeable harm that could arise from making GPS data available.  By comparison, without the benefit of 20/20 hindsight provided by the facts of this case, it was completely unforeseeable that a dealership subscriber would mistakenly report as stolen a vehicle that was in fact being driven by a customer.

---

[1] A limited exception to this policy exists for Avis Rental Car.   But that exception is made because Avis's security department has established its own protocol in working  with police to recover stolen vehicles.

Even if the harm suffered by Plaintiffs was foreseeable, the policy considerations and other *Rife* factors weigh against finding that BMW owed a duty to Plaintiffs. For example, the remoteness between BMW's conduct and the injury suffered by the Bryntesens weigh in favor of finding that BMW owed no duty to Plaintiffs. BMW was several levels removed from the circumstances and actions giving rise to Plaintiffs' claim. It did not investigate the location of the vehicle with Wilson, report the vehicle as stolen, control the information in the police report, or control the actions of the police officers. It did not interact with Plaintiffs in any way and Plaintiffs were not subscribers of the GPS service for that vehicle.

Moreover, the burden upon BMW and the consequences to the community of imposing such a duty would be great. BMW would needlessly investigate each allegation of a stolen vehicle. Instead, BMW's policy ensures the proper authorities generally control the circumstances surrounding the recovery of a missing vehicle. Further, imposing a duty upon BMW would greatly hinder the recovery of vehicles that are actually stolen and increase the risk to those involved. Accordingly, even construing the evidence in a light most favorable to Plaintiffs, the Court concludes that BMW did not owe a duty to Plaintiffs.

### (2)   BMW did not assume a duty to Plaintiffs.

Plaintiffs allege that "[b]y voluntarily undertaking to utilize GPS technology in BMW vehicles to determine the location of said vehicles, BMW has a duty to perform these locates in a non-negligent manner." *Pl.'s Opp'n to BMW's Mot. for Summ. J.* at 5,

Dkt. 149. Such a broad interpretation would equate any action or business decision with a voluntary undertaking and result in a duty owed to the world. Indeed, there would be no need to determine whether a duty existed because a duty would always exist.

"No liability exists under the law of torts unless the person from whom relief is sought owed a duty to the allegedly injured party." *Baccus*, 179 P.3d at 312 (citations omitted). The Bryntesens cannot show that BMW assumed a duty to them. The only undertaking—utilizing GPS technology in BMW vehicles to determine their location—was not directed towards the Bryntesens. BMW never undertook to protect persons in a vehicle utilizing the BMW Assist. The Bryntesens never relied on any service provided by BMW. Moreover, the Court can find no authority suggesting that an individual assumes a duty to a third-party when it offered services to another, when such services were not necessary for protection of the third-party. *See, e.g.,* Restatement (Second) of Torts § 324A (1965) (recognizing that imposing a duty to a third party requires that the services were "necessary for the protection of a third party or his things"). Accordingly, BMW owed no duty to Plaintiffs.

Because there was no duty, there can be no breach. [2] "In order to establish negligence, the plaintiff must prove the existence of each element." *McDevitt v.*

---

2. Also, Plaintiffs' breach argument is directed towards BMW's policy of not providing a locate unless a report has been filed. However, any assumed duty would have been limited to BMW's undertaking toward Plaintiffs—i.e., providing a locate to the Sheriff's Office—and not the underlying policy that was separate from the undertaking. Otherwise, BMW would have assumed a duty to Plaintiffs
(Continued)

*Sportsman's Warehouse, Inc.,* 255 P.3d 1166, 1170 (Idaho 2011) (citation omitted).

Consequently, the Court need not evaluate the remaining elements and will dismiss

Count Four against BMW.

### C.  Count Nine: False Arrest and Imprisonment against BMW, Camp Automotive, Lithia, Grumbly, Rydman, and Wilson.

False arrest and false imprisonment "have been called virtually indistinguishable

and identical." 32 AM. JUR. 2D *False Imprisonment* § 3 (1995). "False arrest is one of

several means of committing false imprisonment." *Id.* False imprisonment requires only

an (1) unlawful (2) violation of another's personal liberty. IDAHO CODE ANN. § 18–2901

(2015). The Idaho Civil Jury Instructions clarify that, to prove false imprisonment, a

plaintiff must show: (1) the defendant used force or an implied threat of force to cause the

plaintiff to be detained; (2) the defendant acted intentionally in detaining the plaintiff; (3)

the defendant acted unlawfully; (4) the restraint was without consent and against the will

of the plaintiffs and (5) the nature and extent of the damages. IDJI 4.10.

More precisely, false imprisonment is "the direct restraint by one person of the

physical liberty of another without adequate legal justification or without probable

cause." *Clark v. Alloway*, 170 P.2d 425 (Idaho 1946) (internal quotation omitted). "The

---

even if it had not provided locates. Plaintiffs have not shown that BMW was negligent in the way it conducted these locates for the Sheriff's Office.

true test seems to be not the extent of the restraint, nor the means by which it is accomplished, but the lawfulness thereof." *Griffin v. Clark*, 42 P.2d 297, 301 (Idaho 1935). "It is false imprisonment when this is done without lawful authority." *Id.*

In Idaho, "[a]nyone who aids or assists in procuring a false imprisonment is equally liable in damages with the one who actually places the person falsely imprisoned under restraint." Harkness v. Hyde, 176 P. 885, 887 (Idaho 1918). *See also* 32 AM. JUR. 2D *False Imprisonment* § 11 (2015) (if an act "is a substantial factor in bringing it about, it is immaterial whether the act directly or indirectly causes the confinement").[3] For example, "[a] private citizen at whose request, direction, or command a police officer makes an arrest without a warrant is liable as an instigator or participant, if the arrest is unlawful." 32 AM. JUR. 2D *False Imprisonment* § 40.

However, the Idaho Supreme Court has recognized circumstances under which a person may have probable cause to detain another:

> [W]here a person has reasonable grounds to believe that another is stealing his property, as distinguished from those cases where the offense has been completed, that he is justified in detaining the suspect for a reasonable length of time for the purpose of investigation in a reasonable manner… probable cause is a defense, provided, of course, that the detention was reasonable.

---

3. Because of a death of other authority in this narrow area of the law, the Idaho Supreme Court has previously relied upon other jurisdictions and the *American Jurisprudence* legal encyclopedia when considering false imprisonment claims. *See, e.g., Sima v. Skaggs Payless Drug Center, Inc.*, 353 P.2d 1085, 1088 (Idaho 1960).

*Sima v. Skaggs Payless Drug Ctr., Inc.*, 353 P.2d 1085, 1088 (Idaho 1960) (citation omitted). Likewise, "[l]iability will not be found where the private citizen neither encouraged nor commanded the police to make the arrest, and there is no suggestion of malice or bad faith on the citizen's part." 32 AM. JUR. 2D *False Imprisonment* § 41. Furthermore, "in the absence of an express request for the detention of another, a private citizen will not be found to have instigated an arrest, where his or her actions were reasonable in light of the facts known or readily available at the time." *Id.* Also, "[n]o liability is incurred if a person merely gives information to an officer tending to show that a crime has been committed, even if the informer gives inaccurate information as a result of a good-faith mistake." *Id. See also, e.g.,* *Amobi v. District of Columbia Dept. of Corrections*, 755 F.3d 980 (D.C. Cir. 2014) (holding that merely giving facts to an officer showing that an offense has been committed and that a person may be suspected of its commission does not comprise the tort of false imprisonment); *Williams v. Adams*, 836 F.2d 958, 962 (5th Cir. 1988) (noting that "witnesses who act in a responsible manner to assist law enforcement personnel in criminal investigations should not necessarily be subjected to liability where their actions are reasonably justified by the surrounding circumstances"); *Keppard v. AFC Enters., Inc.,* 802 So. 2d 959, 965 (La. Ct. App. 2001) ("Reasonable efforts by a citizen toward the suppression of crime, even where a simple mistake exists, do not automatically impose civil liability for false imprisonment, if all the circumstances indicate the efforts were reasonable. The law should, and does, encourage citizens to report suspected criminal activity to the proper authorities…."

(citations omitted)). On the other hand, a person may be liable for knowingly or deliberately giving false information leading to an arrest. 32 AM. JUR. 2D *False Imprisonment* § 41.

Plaintiffs do not allege that BMW's assistance to the Sheriff's officers or Wilson's reporting of the vehicle as stolen were unlawful conduct. Instead, Plaintiffs state that "[t]he conduct at issue was the improper reporting to law enforcement that an accounted-for vehicle was stolen, which was brought about and committed by [Defendants]." *Pl.'s Opp'n to Def. Lithia's Mot. for Partial Summ. J.* at 18, Dkt. 155.  Plaintiffs acknowledge and "do not dispute that the detention by Kootenai County Sheriff's officers was based on probable cause." *Pl.'s Opp'n to Def. Lithia's Mot. for Partial Summ. J.* at 18, Dkt. 155. Yet, neither BMW's implementation of its BMW Assist policy or Wilson's "improper reporting" were unlawful actions. Also, as may be appreciated from the discussion above, so long as one acts in good faith, it is not unlawful to provide inaccurate information to an officer that tends to show a crime has been committed.

Plaintiffs have not provided any evidence that BMW or Defendants encouraged the police to perform a felony stop to recover the vehicle. Defendants merely informed the Sheriff's Office of a potential crime. Similarly, BMW did nothing more than provide location updates to the Sheriff's Office, which exercised its own discretion in when, where, and how to recover the vehicle. Even construing the facts in a light most favorable to Plaintiffs, no reasonable jury could find that the Defendants unlawfully instigated

Plaintiffs' detention. Accordingly, the Court will grant both motions for summary judgment on Count Nine.

### D.  Count Ten: Loss of Consortium against BMW

A claim for loss of consortium "is a wholly derivative cause of action contingent upon a third party's tortious injury to a spouse." *Zaleha v. Rosholt, Robertson & Tucker, Chtd.*, 953 P.2d 1363, 1365 (Idaho 1998). "A loss of consortium claim is necessarily dependent on the injured spouse's success or failure in the underlying claim against the third party." *Id.* All other claims against BMW will be dismissed. Consequently, Plaintiffs' loss of consortium claim against BMW must also be dismissed.

### E.  Count One: Breach of Contract against Camp Automotive and Lithia

Camp Automotive and Lithia claim that the Bryntesens cannot show they breached any term of the Borrowed Vehicle Agreement ("BVA"). The Bryntesens, in their response, assert that they are entitled to summary judgment in their favor on the breach of contract claim. The elements of a breach of contract claim are: (a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages. *Mosell Equities, LLC v. Berryhill & Co.*, 297 P.3d 232, 241 (Idaho 2013) (citation omitted).

Neither party contests the existence of a contract; it is undisputed that a BVA was entered into by the parties. *See Jackson Decl.*, Ex. 6, Dkt. 142-1. The introductory language states that the BVA was made "[f]or and In consideration of the loan of the

[2011 BMW 328ix sedan]." *Id.* The duration of the agreement is set forth in paragraph

nine, which states:

> (9) The loaned vehicle shall be returned by borrower to the Dealer at his
> place of business within _____ days from date, or prior thereto on Dealer's
> demand. Borrower also waives any claim which he [sic] may hereafter arise
> for any and all damage he may hereafter sustain by reason of any action,
> civil or criminal, which Dealer or his Agents may take in connection with
> the Borrower's use or retention of the subject vehicle in the event of
> Borrower's failure to return said vehicle to Dealer as specified in this
> paragraph.

*Id.*

Camp Automotive and Lithia contend that the BVA only addresses Plaintiffs'

obligations and cannot support the breach of contract claim. *Def.'s Mot. Br.* at 5, Dkt.

140-1. Additionally, Defendants contend that "[b]ecause the number of days was left

blank, Mr. Bryntesen was to return the vehicle any time demanded by CAMP BMW" and

"[o]nce Mr. Bryntesen had possession of the vehicle, he had no contractual rights,

meaning he had no right to continued possession of the vehicle." *Id.* at 5–6. In rebuttal,

Plaintiffs contend they were still entitled to use the vehicle and were deprived of its use

when law enforcement took possession of the vehicle.

It is clear from the introductory language of the BVA that Plaintiffs were entitled

to use the loaner vehicle during the duration of the BVA. Although the number of days

was left blank, Defendants argue that the "the BVA is not silent as to duration and the

parties' intent can be ascertained." *Def.'s Reply* at 3, Dkt. 160. Specifically, they contend

the BVA lasts until a demand is made. *Id.* The ninth paragraph of the BVA indicates that

Plaintiffs were required to return the vehicle within an unspecified number of days, or

sooner if the Dealer demanded. *See Jackson Decl.*, Ex. 6, Dkt. 142-1. Yet, construing the facts in a light most favorable to Plaintiffs, there is sufficient evidence to show that the parties intended to provide the car for Plaintiffs' use until their vehicle had been repaired. *See, e.g., Schmidt Decl.*, Ex. 1, at 33:14–35:14. Regardless of the BVA's duration, Camp BMW was entitled to demand the vehicle's return at any time. Upon demand, it was Plaintiffs' obligation that "[t]he loaned vehicle be returned… to the Dealer." *See Jackson Decl.*, Ex. 6, Dkt. 142-1.

There is a genuine issue of material fact as to when and whether such a demand was made. A jury could find that no such demand was made and that Plaintiffs were entitled to use the vehicle until they picked up their repaired vehicle at Camp BMW. Alternatively, a jury could find that the June 18, 2013 telephone call advising Mr. Bryntesen that his vehicle would be ready on June 19 or 20 was a demand for the return of the loaned vehicle. Or, a jury could find that the car was effectively demanded at the time of Plaintiffs' detention. Although any potential damages for this claim may well be limited to the price of the rental car for one day, the claim is nevertheless appropriate for a jury to determine. Accordingly, the motion for summary judgment on the breach of contract claim will be denied.

### F.  Count Five: Defamation against Camp, Lithia, and Wilson

To establish defamation, a plaintiff must prove that: (1) the defendant communicated information about the plaintiff to others; (2) the information was defamatory; and (3) the plaintiff was damaged because of the communication. *Clark v.*

*The Spokesman–Review,* 163 P.3d 216, 219 (Idaho 2007). "A defamatory statement is one tending to harm a person's reputation, [usually] by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business." *Weitz v. Green*, 230 P.3d 743, 754 (Idaho 2010) (citations omitted) (alteration in original).

Plaintiffs' defamation claim relies upon statements to BMW and law enforcement that the vehicle Plaintiffs were driving was stolen. *See Am. Compl.* at ¶66, Dkt. 1-4. Defendants contend that they did not communicate any information concerning plaintiffs to anyone. *See, Def's Mot. Br.* at 7, Dkt. 140-1. Instead, they communicated information to the police that the vehicle was likely stolen. *Id.* Plaintiffs counter that the statements about the stolen car were "to the effect that whoever was found to be in possession of the vehicle is a thief and a felon" and the statements "implicate them as criminals." *Pl.'s Opp'n to Def. Lithia's Mot. for Partial Summ. J.* at 6, Dkt. 155.

As evidenced by the parties' current and previous briefs, there is no dispute that Wilson believed the missing vehicle had likely been stolen. Additionally, there is no dispute over what statements were made in the police report:

> Camp BMW reports that a vehicle has been missing from the lot since 05/17. The keys are missing from the show room as well. They will activate the telematics service and update with location.

*See Jackson Decl.*, Ex. 1, Dkt. 142-1.

"A precondition to any recovery in a defamation action is that the plaintiff establish[es] that the words which were published referred *with particularity* to him." *Farber v. Cornils*, 487 P.2d 689, 691 (Idaho 1971) (emphasis added). In *Farber*, the

Court denied a plaintiff's defamation claim regarding a broadcast which referred to "persons controlling this property." The court found that such a broad identifier could have referred to any of several individuals and could not have reasonably been taken by members of the public as referring to the plaintiffs. *Id.* Here, there is no indication that Wilson identified the persons who he believed stole the vehicle. The police report does not identify anyone and only generally indicates the date the vehicle went missing.

Plaintiffs' entire defamation claim depends upon Wilson's police report "implicat[ing] them as criminals." *Pl.'s Opp'n to Def. Lithia's Mot. for Partial Summ. J.* at 6, Dkt. 155. The Court can find no authority that permits it to infer criminal characteristics from a missing vehicle report and accredit those characteristics to later-identified individuals in order to support a claim of defamation. Plaintiffs cannot establish that any communicated words referred with particularity to them. Even construing the facts in a light most favorable to Plaintiffs, no reasonable jury could conclude that Wilson's statements to BMW or to the Sheriff's Office were information communicated about Plaintiffs. Accordingly, Defendants' motion for summary judgment on the defamation claim will be granted.

### G. Count Seven: Intentional Infliction of Emotional Distress against Camp Automotive, Lithia, Grumbly, and Wilson

"Under Idaho law, a claim for intentional infliction of emotional distress has four elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe."

*Nation,* 158 P.3d at 968 (citations and quotations omitted); *see also Brown v. Matthews Mortuary, Inc.,* 801 P.2d 37, 41 (Idaho 1990) ("In order to recover for the intentional infliction of emotional distress the plaintiff must prove that the defendant's conduct was extreme and outrageous which either intentionally or recklessly causes severe emotional distress."). "Although a plaintiff may in fact have suffered extreme emotional distress... no damages are awarded in the absence of extreme and outrageous conduct by a defendant." *Edmondson v. Shearer Lumber Prods.,* 75 P.3d 733, 740 (Idaho 2003) (citation omitted). "Courts have required very extreme conduct before awarding damages for the intentional infliction of emotional distress." *Id.* at 741. "Even if a defendant's conduct is unjustifiable, it does not necessarily rise to the level of atrocious and beyond all possible bounds of decency that would cause an average member of the community to believe it was outrageous." *Id.* (citation and quotation omitted). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recover, or whether it is necessarily so." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS, § 46 comment h (1965)).

As more fully detailed in this Court's decision denying *Plaintiffs' Motion for Leave to Amend their Complaint to Assert Claim for Punitive Damages Pursuant to Idaho Code § 6-1604* (Dkt. 80), Defendants' conduct was not extreme and outrageous. *See Memo. Decision*, Dkt. 162. Even assuming all of the factual allegations alleged by Plaintiffs are true, the Complaint fails as a matter of law in bringing the Defendants' actions under Idaho's definition of extreme and outrageous conduct. Likewise, the

conduct and policies of Defendants do not rise to the level of atrocious and beyond all possible bounds of decency that would cause an average member of the community to believe it was outrageous. Accordingly, Defendants' motion for summary judgment will be granted as to the claim for intentional infliction of emotional distress.

### H. Count Eight: Violation of the Idaho Consumer Protection Act § 48-603(18) against Camp Automotive and Lithia

In order to have standing under the Idaho Consumer Protection Act ("ICPA"), "the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively." *Duspiva v. Fillmore*, 293 P.3d 651, 660 (Idaho 2013) (quotation omitted). The ICPA does not apply "to a merely contemplated transaction, where there was no contract." *Haskin v. Glass,* 640 P.2d 1186, 1189 (Idaho Ct. App. 1989). In this case, Plaintiffs allege they "had a contractual relationship with [Camp Automotive] by virtue of the Borrowed Vehicle Agreement and the contract for repairs to the Plaintiffs' personal vehicle." *Am. Compl.*at ¶ 86, Dkt. 1-4.

The ICPA provides:

> Any person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property . . . as a result of the use or employment by another person of a method, act or practice declared unlawful by this chapter, may treat any agreement incident thereto as voidable or, in the alternative, may bring an action to recover actual damages or one thousand dollars ($1,000), whichever is the greater.

IDAHO CODE ANN. § 48-608(1). Accordingly, Plaintiffs may elect to treat the agreement upon which their ICPA claim is based as void, or seek damages suffered in connection

with that contractual relationship. But the ascertainable loss must be connected to the purchase or lease of goods or services. *See id.*

The purpose of the ICPA is "to protect both consumers and businesses against unfair methods of competition and unfair and deceptive practices in the conduct of trade or commerce, and to provide efficient and economical procedures to secure such protection." IDAHO CODE ANN. § 48–601. The ICPA is not a mechanism to attack a business's practices that are unrelated to the contractual relationship. Instead, the ICPA is a remedial statute and should, therefore be construed to give effect to the legislature's intent. *See id.*; *In re W. Acceptance Corp.*, 788 P.2d 214, 218 (Idaho 1990).

Plaintiffs allege that Camp BMW and Lithia "engaged in unconscionable acts by leasing the Replacement Vehicle to Plaintiffs and then reporting said vehicle as stolen while it was still in Plaintiffs' lawful possession." *Am. Compl.* at ¶87, Dkt. 1-4. Such conduct, Plaintiffs allege, violates § 48-603(18) of the ICPA, which states:

> The following unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful, where a person knows, or in the exercise of due care should know, that he has in the past, or is:
> ***
> (18) Engaging in any unconscionable method, act or practice in the conduct of trade or commerce, as provided in section 48-603C, Idaho Code, provided, however, that the provisions of this subsection shall not apply to a regulated lender as that term is defined in section 28-41-301, Idaho Code;

IDAHO CODE ANN. § 48-603(18). In determining whether an act or practice is unconscionable, the Court must determine "whether the sales conduct or pattern of sales conduct would outrage or offend the public conscience." IDAHO CODE ANN. § 48-

603C(2)(d).[4] "When construed in the context of the first three subsections, [subsection 48-603C(2)(d)] is designed to prohibit unconscionable 'sales conduct' that is directed at the consumer." *State v. Daicel Chem. Indus., Ltd.*, 106 P.3d 428, 435 (Idaho 2005). Additionally, the sales conduct must be "in the conduct of trade or commerce." IDAHO CODE ANN. § 48-603(18). 'Trade' and 'commerce' mean "the advertising, offering for sale, selling, leasing, renting, collecting debts arising out of the sale or lease of goods or services or distributing goods or services." IDAHO CODE ANN. § 48-602(2).

Plaintiffs' ICPA claim hangs tenuously upon the relationship formed with Camp BMW by virtue of the BVA and the contract for repairs to Plaintiffs' personal vehicle. Notably, Plaintiffs do not allege a direct contractual relationship with Lithia. Moreover, Plaintiffs do not argue they suffered any loss from the repair contract. Thus, Plaintiffs' ICPA claim depends upon the contractual relationship formed by virtue of the BVA.

There is a genuine issue of material fact as to whether the BVA is a contract for the lease of a vehicle. Black's Law defines a lease as: "A contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, usu. rent." *Lease*, BLACK'S LAW DICTIONARY (10th ed. 2014). Defendants have repeatedly referenced Plaintiffs' obligations under the BVA. Taken in a

---

4. Subsections (a)-(c) are inapplicable to the case at hand because there has been no allegation that Camp BMW exploited a particular weakness or disadvantage of Plaintiffs. *See, e.g., State v. Daicel Chem. Indus., Ltd.*, 106 P.3d 428, 435 (Idaho 2005).

light most favorable to Plaintiffs, these obligations and Plaintiffs' contract for repair of their personal vehicle show sufficient consideration to establish that the BVA was a lease.

Plaintiffs' Amended Complaint alleges that Camp BMW's lease of the vehicle to Plaintiffs and then reporting it as stolen while in their possession was unconscionable. Plaintiffs' arguments, however, make it clear that they are targeting company-wide practices that are irrelevant to their contractual relationship and beyond the scope of remedial relief available under the ICPA. Camp BMW and Lithia's practice of reporting missing vehicles as stolen cannot feasibly be characterized as conduct directed at Plaintiffs. Moreover, Plaintiffs have not presented any argument as to how Camp BMW's conduct alleged in this case constitutes "sales conduct" as used in Idaho Code § 48-603C(2)(d), nor has it cited any authority so holding. The alleged conduct is only tangentially related to the lease or any other type of "sale." Thus, Defendants' conduct does not fall within the scope of Idaho Code § 48-603(18).

Even if such conduct were characterized as "sales conduct," it does not outrage or offend the public conscience. It is for the Court, not the jury, to determine whether the sales conduct or pattern of sales conduct would outrage or offend the public conscience. IDAHO CODE ANN. § 48-603C(2)(d) (emphasis on "as determined by the court"). The Court previously found that Defendants' conduct was not outrageous. Instead, the low foreseeability of the outcome in this case indicates that the conduct would not outrage or offend the public conscience. Wilson reasonably inquired about the vehicle's location and concluded that it had likely been stolen. Although his conclusion was ultimately

incorrect, his conduct in reaching that determination and ultimately reporting the vehicle as stolen does not offend the public conscience. Accordingly, the Court will grant Defendants' motion as to Count Eight.

**ORDER**

**IT IS ORDERED:**

1.     BMW of North America's Motion for Summary Judgment of Dismissal (Dkt. 130) is **GRANTED**. BMW shall be **DISMISSED** from the case.

2.     Camp Automotive, *et. al.*'s Motion for Partial Summary Judgment (Dkt. 140) is **GRANTED in part** and **DENIED in part**. The Court grants summary judgment to Camp Automotive, *et. al.* on all claims for which they moved for summary judgment – except the breach of contract claim.

3.     The Court will enter a separate notice of hearing setting a status conference for the purpose of scheduling a trial date.

DATED: June 9, 2015

B. Lynn Winmill
Chief Judge
United States District Court